* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin with modifications.
 * * * * * * * * * * * *Page 2 EXHIBITS
The following were marked and received into evidence by the Deputy Commissioner as:
1. Stipulated Exhibit No. 1, Medical Records;
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Order allowing Mr. Jarvis Harris to withdraw as counsel of record for Plaintiff;
3. Stipulated Exhibit No. 3, Plaintiff's Responses to Defendants' First
Set of Interrogatories and Request for Production of Documents;
4. Stipulated Exhibit No. 4, Written Responses from Sue Drinkard, MSN, FNP-CS;
5. Stipulated Exhibit No. 5, Written Responses from Dr. Paula Ross;
5. Stipulated Exhibit No. 6, Written Responses from Dr. Mark Yates;
6. Plaintiff's Exhibit No. 1, MRI images of Plaintiff's back;
7. Plaintiff's Exhibit No. 2, Correspondence addressed to Plaintiff from the undersigned, dated September 7, 2005;
8. Plaintiff's Exhibit No. 3, September 19, 2005 Hearing Calendar with attached Pre-Trial Order and Subpoena; and
9. Plaintiff's Exhibit No. 4, Videotape prepared by Plaintiff.
10. The issue before the Deputy Commissioner is: Whether Plaintiff's symptoms were caused or significantly aggravated by his on-the-job injury of February 22, 2003.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. All parties are properly before the Industrial Commission and the Industrial *Page 3 
Commission has jurisdiction over the parties and the subject matter.
2. At the time of the hearing before the Deputy Commissioner, Plaintiff was a 48-year-old high school graduate with some college education. Plaintiff held certificates in auto mechanics and air conditioning repair and also worked as a private investigator for a period of time.
3. In 1999, Plaintiff began working for Defendant-Employer as a technician earning approximately $9.00 to $10.00 per hour. After a year and a half of employment, Plaintiff's wages were increased to $13.00 per hour. As a technician, Plaintiff's job duties included doing mechanic work for both commercial and personal vehicles. Specifically, Plaintiff handled alignments, brakes, timing belts, diagnostic testing, and tune-ups for Defendant-Employer.
4. Towards the end of his shift on February 22, 2003, Plaintiff slipped and fell on an oil spot on the concrete floor while performing his duties as a technician. Plaintiff fell backwards, with the palms of his hands hitting the floor, followed by his buttocks. During the fall, oil and debris entered Plaintiff's left eye.
5. Later that evening after he left the job site, Plaintiff sought medical treatment at the Moses Cone Hospital Emergency Room. Plaintiff reported his fall at work and stated that he was experiencing pain in his neck. Medication was prescribed and Plaintiff was advised to follow up with his primary care physician as needed. Plaintiff did not receive any work restrictions at this emergency room visit.
6. After receiving treatment at the emergency room, Plaintiff remained out of work over the next four to five days. On February 28, 2003, Plaintiff sought treatment with Dr. Stephen Miller with U.S. Healthworks. Plaintiff reported pain in the back, wrists, and shoulder. Upon examination, Dr. Miller noted full range of motion in all three areas where Plaintiff *Page 4 
identified pain. Dr. Miller diagnosed Plaintiff with a back contusion and provided work restrictions of no lifting greater than 10 pounds. Plaintiff continued to treat with Dr. Miller over the next couple of months until he was released to full duty work on April 2, 2003.
7. On April 4, 2003, Plaintiff called Dr. Miller's office with complaints of chest pain. Plaintiff was able to be seen later that day by Dr. Miller, who placed Plaintiff on work restrictions based on his cardiac complaints. Dr. Miller also referred Plaintiff to a cardiologist for further evaluation of his chest pain.
8. In 1999, Plaintiff came under the care of Sue Drinkard, a board-certified family nurse practitioner with Healthserve Medical Center, for treatment of his high blood pressure. Plaintiff continued receiving treatment with this medical provider until 2001. Following his February 22, 2003 accident, Plaintiff returned for further evaluation with Healthserve on March 24, 2003. Nurse Drinkard stated that Plaintiff's high blood pressure was well controlled as of July 9, 2003, and there were no work restrictions provided due to his high blood pressure condition. At Plaintiff's urging, Nurse Drinkard referred Plaintiff to a cardiologist for evaluation. Nurse Drinkard opined to a reasonable degree of medical certainty that Plaintiff's high blood pressure was not related, caused, aggravated, or accelerated by Plaintiff's February 22, 2003 incident.
9. On May 29, 2003, Dr. Paula Ross evaluated Plaintiff for chest and neck pain. After examining Plaintiff, Dr. Ross did not feel that Plaintiff's chest pain was due to a coronary ischemia. Dr. Ross did not recommend any further cardiac testing, but decided to monitor Plaintiff's blood pressure and his response to the medication. During her treatment of Plaintiff, Dr. Ross did not take him out of work or place him on work restrictions for any cardiovascular problem. Dr. Ross opined to a reasonable degree of medical certainty, and the undersigned *Page 5 
finds, that Plaintiff's February 22, 2003 incident did not cause or exacerbate Plaintiff's high blood pressure problems.
10. In 1994, Plaintiff sustained a cervical spine injury while working for another employer. Dr. Mark Yates, a board-certified orthopaedic surgeon, treated Plaintiff for this injury. Plaintiff underwent a cervical fusion and was eventually released on January 12, 1995, with a five percent (5%) permanent partial impairment rating to the back. Following his February 22, 2003 incident, Plaintiff returned to Dr. Yates for evaluation of neck pain, left thigh pain, left chest pain with extension to the left shoulder, increasing fatigue, and lightheadedness with standing. Dr. Yates recommended stretching exercises for his neck and returning on an as needed basis. Dr. Yates also referred Plaintiff to a neurologist to be evaluated for a condition known as temporal arteritis, which was completely unrelated to Plaintiff's February 22, 2003 incident.
11. On December 28, 2003, Plaintiff returned to Dr. Yates for his follow up appointment. Dr. Yates noted Plaintiff had been out of work since March 2003 with continued complaints of pain in his upper neck with associated headaches, numbness, and tingling, as well as back pain. Recent x-rays and an MRI scan did not reveal any significant changes other than a small protrusion at L4-5, which did not cause any compression. Based on his examinations of Plaintiff and a review of the diagnostic tests, Dr. Yates did not assign any additional permanent partial impairment rating as a result of the February 22, 2003 incident. Further, Dr. Yates did not assign any work restrictions as a result of the February 22, 2003 incident.
12. None of Plaintiff's treating physician opined that the medication Vioxx, which was prescribed to Plaintiff, caused or contributed to any alleged cardiac complaints.
13. The burden is on Plaintiff to establish that the conditions for which he is seeking *Page 6 
benefits under the Workers' Compensation Act are causally related to the February 22, 2003 compensable injury by accident. In this case, the medical evidence is insufficient to establish the compensability of any of Plaintiff's medical conditions.
14. Defendants have provided appropriate medical care and paid for time missed from work related to the February 22, 2003 incident. Plaintiff was not assigned any new or additional permanent partial impairment rating nor was he taken out of or restricted from working due to the February 22, 2003 incident. The Full Commission finds there to be insufficient evidence upon which to find that Plaintiff sustained any further disability as a result of the February 22, 2003 incident.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. "In a workers' compensation claim the employee has the burden of proving that his claim is compensable." Holley v. ACTS, Inc.,357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). In many instances, the facts in evidence are such that any layman of average intelligence would know what caused a person's injuries; however, the exact nature and cause of some injuries must be established by expert opinion evidence. Click v.Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). In this case, there is insufficient medical evidence to establish a causal link between Plaintiff's February 22, 2003 incident and any of the medical conditions for which he is seeking compensation.
2. Plaintiff is not entitled to further benefits under North Carolina Workers' *Page 7 
Compensation Act. N.C. Gen. Stat. § 97-2 (et. seq.).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for further benefits under the Act is hereby DENIED.
2. Each side shall bear its own costs.
This 29th day of January 2007.
 S/_____________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________________ THOMAS J. BOLCH COMMISSIONER *Page 1